1  Henry Amador C-28545
   P.O. Box 689/GW- 354-U
2  CTF Central facility
   Soledad, CA.93960-0689
3
                                            FILED
4  In Propria Persona
                                        08 JUL 30 PM 1: 12

                                        RICHARD W. WIEKING
                                        CLERK U.S. DISTRICT COURT
                                        NORTHERN DISTRICT OF CALIFORNIA

5

6              IN THE UNITED STATES DISTRICT COURT

7           FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                   SAN FRANCISCO DIVISION

9

10  Henry Amador,                      C08-1467 JSW (PR)

11              Petitioner,            DENIAL AND TRAVERSE;
                                       MEMORANDUM OF POINTS AND
12        v.                           AUTHORITIES

13  Ben Curry, Warden,

14              Respondent.

15  _____/

16

17  TO:   THE HONORABLE JEFFREY S. WHITE, JUDGE OF THE UNITED STATES
         DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA.
18

19       HENRY AMADOR, the petitioner in this matter, makes the

20  following admissions and denials:

21    1.  He admits he is a sentenced prisoner at the Correctional

22        Training Facility, Soledad, California, having been sent-

23        enced by the Los Angeles Superior Court to serve a term of

24        fifteen (15) years to life following a finding of guilty

25        to the crime of second degree murder in 1981. He does not

26        contest the validity of the conviction which resulted in

27        continuous incarceration for twenty eight (28) years. His

28        continued restraint, based on Board of Parole Hearings

                                1.

1   denial is illegal and a violation of due process by fail-

2   ing to find him suitable for parole and denying him a paro-

3   le date.

4   2.   Petitioner admits and denies allegations in said paragraph

5   Petitioner admits, he filed a petition for writ of habeas

6   corpus in Los Angeles Superior Court, alleging that the

7   Board of Parole Hearings' 2007 decision denying him parole

8   violated his due process rights. He further admits that

9   on July 31, 2007 the Superior Court denied the petition,

10   finding that the Board's 2007 decision supports a conclu-

11   sion that petitioner continues to pose a risk of danger,

12   and is therefore unsuitable for parole. He also admits

13   the court noted that the record reflects that there is

14   some evidence that "the offense was carried out in a

15   manner which demonstrates an exceptionally callous dis-

16   regard for human suffering." Petitioner expressly denies

17   the court found some evidence to support the Board's

18   determination that he has a history of unstable and tumu-

19   ltuous relationships with others, except for his wife and

20   her alone.

21   3.   Petitioner admits allegations in said paragraph.

22   4.   Petitioner admits he exhausted his state court remedies

23   with regard to the Board's decision violating his due

24   process rights.

25   5.   Petitioner admits allegations in said paragraph.

26   6.   Petitioner expressly denies the respondents allegation

27   that petitioner is not entitled to federal relief under

28   28 U.S.C § 2254  petitioner's liberty interest in an

2.

"expectation" of parole, does not attach upon being found suitable for parole, but upon entrance of the prison gates (Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 915). Petitioner's liberty interest has long required his grant of parole because his minimum eligible parole date has lapsed and he had been repeatedly evaluated to pose no further risk to public safety. Penal Code. §3041 (a); 15 CCR §§2280, 2281 (a). Although factor of particular egregious commitment offense may be sufficient ground for unsuitability initially (Rosenkrantz, 29 Cal. 4th at p. 679) each ground for unsuitability must be supported by relevant, reliable evidence (Id., p. 658; 15 CCR §2402 (b)), and offense, facts and other unchangeable factors may not serve to deny parole repeatedly or interminably to a parole qualified inmate, extinguishing the possibility of parole. Biggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003) [Biggs]; Irons v. Warden of California State Prison-Solano, 358 F.2d 936, 947 (E.D. Ca. 2005); Hudson v. Kane, __ F.2d __, 2005 WL 2035590, WL p.9 (N.D. Ca. 2005).

7.  Petitioner denies allegations in said paragraph. This argument is foreclosed by controlling Ninth Circuit authority, See, e.g., Irons, 505 F.3d at 850 (California Penal Code section 3041 vest ... all ... California inmates whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of Due Process Clause."); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123,

1    1125 (9th Cir. 2006) ("We hold that California inmates

2    continue to have a liberty interest in parole after In re

3    Dannenberg,   34   Cal. 4th   1061, 23 Cal. Rptr. 3d 417,

4    104 P.3d 783 (2005).").

5  8. Petitioner expressly denies allegations in said paragraph.

6    Due process pursuant to Greenholtz v. Inmates of Nabraska

7    Penal Complex, is not satisfied merely by an opportunity

8    to be herd, and if denied parole, a written explanation of

9    the grounds for denial, but due process guarantees that

10   the decision be reasonable in light of the facts, being

11   supported by "some evidence" that petitioner is presently

12   too dangerous to grant a fixed parole release date. (In

13   re Dannenberg, 34 Cal. 4th 1t 1080 supra). Petitioner de-

14   nies that the Board met this standard.

15  9. Petitioner denies allegations in said paragraph. Califor-

16   nia inmates appearing before the Board of Parole Hearings

17   have a liberty interest protected by the United States

18   Constitution. In re Rosenkrantz, 29 Cal. 4th 616, 654, 658

19   (2002); Mcquillion v. Duncan, 306 F.3d 895, 902 (2002);

20   In re Dannenberg, 34 Cal. 4th 1061, 1084 (2005).

21   The touchstone of due process is the protection of indiv-

22   idual against arbitrary government action. Dent v. West

23   Virginia, 129 U.S. 114, 123 (1989); Wolff v. McDonnel, 418

24   U.S. 539, 558 (1974); Daniels v. Williams, 474 U.S. 327,

25   331 (1986).

26   Board Decision which lacks evidence to support them are

27   arbitrary, and thereby violative of the Due Process Clause

28   of both the California and Federal Constitutions. See

4.

California Constitution, Article I, §7; U.S. Constitution, Amendment 14. Also see In re Powell, 45 Cal. 3d 894, 904 (1988); In re Rosenkrantz, supra, at 654-658; McQuillion v. Duncan, supra at 903-906.

The standard to be applied when reviewing Board actions is the "some evidence" test set forth in Superintendent v. Hill, 472 U.S. 445, 457 (1985); In re Powell, supra at 1084.

There must be some link, or nexus, between the facts re-lied upon by the 2007 panel to deny parole, and the under-lying decision they reached: That petitioner would pose "an unreasonable risk of danger to society if released from prison.The 'some evidence standard of Superintendent v. Hill is claerly established law in the parole context for purposes of §2254 (d). Sass, 461 F.3d at 1129.

10. Petitioner denies allegations in said paragraph. The Fed-eral court's task is not to determine whether some evid-ence supports the reasons cited for parole denial, "but whether some evidence indicates a parolee's release un-reasonably endangers public safety Irons v. Carey 505 F. 3d 851; McCarns v. Dexter 534 F. Supp. 2d 1138 *27-28. Thus, " [t]he test is not whether some evidence supports the reasons the Board cites for denying parole, but whet-her some evidence indicates a parolee's release endangers ʼpuplic safety.

11. Petitioner denies allegations in said paragraph. The State Court denied the petition on the ground that "some evidence" in record supported the Board's decision. The court characterized

1    the Board's decision as based unequivocally and exclusiv-
2    ely on petitioner's commitment offense under these cir-
3    cumstances, the Board's reliance on the circumstances of
4    the 1980 murder to find Amador unsuitable for parole did
5    not comport with the some evidence standard. It violated
6    due process. The commitment offense can negate suitability
7    only if circumstances of the crime reliably establihed by
8    evidence in the record rationally indicate that the offen-
9    er will present an unreasonable public safety risk if re-
10   leased from prison. Yet, the predictive value of the comm-
11   itment offense may be very questionable after a long per-
12   iod · f time ( Irons v.Warden of California State Prison--
13   Solano (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947, fn. 2).
14   12.  Petitioner denies allegations in said paragraph. Amador's
15   commitment offense, which occurred twenty-eight years ago,
16   cannot demonstrate that Amador's release will pose an imm-
17   danger to public safety. see Rosenkrantz v. Marshall, 444
18   F. Supp. 2d 1063, 1084 (C.D. Cal. 2006) ("While relying
19   upon petitioner's crime as an indicator of his dangeros-
20   ness may be reasonable for some period of time, in this
21   case, continued reliance on such unchanging circumstances
22   --after nearly 2 decades of incarceration and half a doz-
23   en parole suitability hearings--violates due process be-
24   cause petitioner's commitment offense has become such an
25   unreliable predictor of his present and future dangerous-
26   ness that it does not satisfy the 'some evidence' standard.
27   After nearly twenty years of rehabilitation, the ability
28   to predict a prisoner's future dangerousness based simply

6.

on the circumstances of his or her crime is nil."); Scott,
133 Cal. App. 4th at 595 ("[T]he predictive value of the
commitment offense may be very questionable after a long
period of time.").

The critical issue in this case is whether Amador's commit-
ment offense alone can satisfy the "some evidence" standard
more than 28 years after he committed the offense. The
Ninth Circuit's opinion in Irons shed light on whether re-
liance on an immutable factor such as the commitment off-
ense violates due process. Although the court affirmed the
BPT's denial of parole for Irons, it made clear that "in-
definite detention based solely on an inmates commitment
offense, regardless of the extent of his rehabilitation,
will at some point violate due process, given the liberty
interest that flows from the relevant California statutes.

13. Petitioner denies allegations in said paragraph. Biggs v.
Terhune, 334 F. 3d 910 (9th Cir. 2003), Biggs explained
that the value of the criminal offense fades over time as
a predictor of parole suitability: "The Parole Board's
decision is one of 'equity' and requires a careful balanc-
ing and assessment of the factors considered ... A contin-
ued reliance in the future on immutable factors, the cir-
cumstances of the offense and conduct prior to imprisonment
runs contrary to the rehabilative goals espoused by the
prison system and could result in a due process violation.
Biggs, 334 F.3d at 916-17. Biggs upheld the initial denial
of parole date based solely on the nature of the crime and
prisoner's conduct before incarceration, but cautioned

7.

that "[o]ver time..., should Biggs continue to demonstrate
exemplary behavior and evidence of rehabilitation, denying
him a parole date simply because of the nature of Biggs'
offense and prior conduct would raise serious questions in-
volving his liberty interest in parole." Id. at 916. Next
came Sass, which criticized Biggs statements as improper
and beyond the scope of the dispute before the court. Sass
determined that the parole board is not precluded from re-
lying on unchanging factors such as the circumstances of
the commitment offense or the parole applicant's pre-offense
behavior in determining parole suitability (Sass 461 F.3d
1123) (commitment offense in combination with prior offense
provided some evidence to support denial of parole at sub-
sequent parole consideration hearing). Irons then determin-
ed that due process was not violated by the use of the com-
mitment and pre-offense criminality to deny parole for a
prisoner 16 years into his 17-to-life sentence. Irons emph-
asized that in all three cases (Irons, Sass and Biggs) in
which the court "held that a parole board's decision to
deem a prisoner unsuitable for parole solely on the basis
of his commitment offense comports with due process, the
decision was made before the inmate had served the minimum
number of years required by his sentence." Irons, 479 F.3d
at 65. A critical difference between this case and Biggs,
Sass and Irons is that Amador has served a substantial amo-
unt of time beyond his minimum sentence. The court must co-
sider that at some point after an inmate has served his mi-
nimum sentence the probative value of his commitment offense

8.

1
2
3
4
5
6
7
8

as an indicator of "unreasonable risk of danger to society" recedes below the "some evidence" required by due process to support a denial of parole. See Irons, 479 F.3d at 665. A decision to revoke a parole based solely on an inmate's commitment offense that can no longer be considered probative of dangerousness to society would be arbitrary and not comport with the "some evidence" standard. See Hill, 472 U.S. at 545-55, 457. This is one of thoses cases.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

14. Petitioner denies allegations in said paragraph. A habeas petitioner is entitled to an evidentiary hearing if: (1) the allegations in his petition would, if proved entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. See, e.g., Townsend v. sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Jones, 114 F.3d at 1010; Smith v. McCormick, 914 F.2d 1153, 1170 (9th Cir. 1990). "[W]here a petitioner raises a colorable claim, [to relief], and where there has not been a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing." Id. (quoting Harich v. Wainwright, 813 F.2d 1082, 1090 (11th Cir. 1987)). In these circumstances, a petition may be dismissed without a hearing only when it consists solely of conclusory, unsworn statements unsupported by any proof or offer therof. Coleman v. McCormick, 874 F.2d 1280, 1284 (9th Cir. 1989)(en banc).

26
27
28

15. Petitioner denies allegations in said paragraph. Where no evidence supports the Board's conclusion that petitioner's release to strict supervision of parole would unreasonably

9.

1    endanger public safety the proper remedy is immediate rel-

2    ease. (McQuillion v. Duncan, 342 F.3d 1012, 1015-1016 (9th

3    Cir. 2003); In re Deluna, 126 Cal. App. 4th 585 (2005)

4    ["Where there is no evidentiary basis for denying parole,

5    it is appropriate to order the Board to set a release date"],

6    citing In re Smith, 109 Cal. App. 4th 489 (2003); In re Lee

7    49 Cal. Rptr. 3d 931, 941 (2006)); In re Elkins, 50 Cal.

8    Rptr. 3d 503, 523 (2006) [where there is not "some evidence"

9    to support the parole Board's or Governor's conclusions to

10   deny parole, release to parole is proper remedy]; Fay v.

11   Noia, 372 U.S. 391, 401-402 (1963) ["if the imprisonment

12   cannot be shown to conform with the fundamental requiremen-

13   ts of law, the individual is entitled to his release."];

14   See also Peyton v. Rowe, 391 U.S. 54, 63-64 (1968) ["a pr-

15   incipal aim of the writ is to provide for swift judicial

16   review of alleged unlawful restraint on liberty."]). Should

17   this court determine that the Board's February 6, 2007 de-

18   nial of petitioner's parole was not supported by some evid-

19   ence in the record, with an indicia of reliability to the

20   pertinent consideration of public safety, the denial of

21   parole would be a violation of due process and a deprivat-

22   ion of petitioner's protected liberty interest in parole

23   release. This would entitle petitioner to the granting of

24   this writ.

25   16. Petitioner denies allegations in said paragraph. Grounds

26       for relief are stated clearly in the original petition.

27   17. Petitioner denies allegations in the answer from the re-

28       spondent.

10.

1   For the reasons presented in his Petition and in this Denial,
2   petitioner asserts that his Federal and State due process rights
3   have been violated by the Board's failure to respect the limits
4   parole authority imposed by the State Constitution and applicable
5   parole regulations. Mr. Amador denies all other facts, grounds,
6   claims, and arguments, urged by the respondent, unless specific-
7   ally admitted by him in the course of addressing those specific
8   claims and arguments. He ask this court to grant him the relief
9   requested  in his original petition.

10

11

12

13  DATED: _7-25-08_

14                          Respectfully submitted,

15

16                          *Henry Amador*

17                          Henry Amador
                            Petitioner, In Pro Per

18

19

20

21

22

23

24

25

26

27

28

                                11.

## MEMORANDUM OF POINTS AND AUTHORITIES

THE STATE'S COURT OF DENIAL OF PETITIONER'S HABEAS CLAIM
WAS AN UNREASONABLE APPLICATION OF FEDERAL LAW AND WAS
BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS, VIO-
LATING HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FOURTE-
ENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

On federal review of state court writ under the AEDPA, the
writ may be granted only where the state court action "(1) result-
ed in a decision that was contrary to or involved an unreasonable
application of clearly established federal law, as determined by
the Supreme Court of the United States; or (2) resulted in a deci-
sion that was based on an unreasonable determination of the facts
in light of the evidence presented in the State court proceeding."
(28 U.S.C. §2254 (d)); see also Williams v. Taylor, 529 U.S. 362,
413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (hereinafter "Williams").
Courts Are not required to address the merits of a particular claim
but may simply deny a habeas application on the ground that relief
is precluded by 28 U.S.C. §2254 (d). Lockyer v. Andrade, 538 U.S.
63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).
It is the habeas petitioner's burden to show he is not precluded
from obtaining relief by §2254(d). Woodford v. Visciotti, 537 U.S.
19, 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002).

In analyzing the procedural safeguards owed to an inmate un-
der the Due Process clause, [a court] must look to two distinct el-
ements: (1) a deprivation of a constitutionally protected liberty
interest or property interest, and (2) a denial of adequate proce-
dural safeguards." Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir.
2003). The second prong of this test is satisfied if: (1) the in-
mate has been afforded an opportunity to be heard and if denied
parole, informed of the reasons underlying the decision; and (2)

1  the Board's decision is supported by "some evidence" or is not

2  otherwise arbitrary. Irons v. Carey 505 F.3d 851 and Sass v. Cal.

3  Bd. of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (cit-

4  ing Superintendent v. Hill, 472 U.S. 445, 457, 105 S. Ct. 2768, 86

5  L. Ed. 2d 356 (1985)); see also Biggs, 334 F.3d at 915 (citing Mc

6  Quillion, 306 F.3d at 904).

7        In this case Amador contends the Board's conclusion that he

8  would pose an unreasonable risk of danger to society if released

9  is both arbitrary and not supported by "some evidence." California

10 courts have made clear that the findings that are necessary to de-

11 em a prisoner unsuitable for parole," Irons, 505 F.3d at 851 are

12 not that a particular factor or factors indicating unsuitability

13 exist, but that a prisoner's release will unreasonably endanger

14 public safety. In re Dannenberg, 156 Cal. App. 4th 1387, 68 Cal.

15 Rptr. 3d 188, 2007 WL 3408290, at *9 (Cal. Ct. App. 2007), modif-

16 ied, 2007 Cal. App. LEXIS 1985, 2007 WL 4227229 (Cal. Ct. App. Dec.

17 3, 2007); In re Lee, 143 Cal. App. 4th 1400, 1408, 49 Cal. Rptr.

18 3d 931 (Cal. Ct. App. 2006); In re Scott, 133 Cal. App. 4th 573,

19 595, 34 Cal. Rptr. 3d 905 (Cal. Ct. App. 2005); see Cal Penal Code

20 § 3041 (b) (providing that the Board "shall set a release date un-

21 less ...consideration of public safety requires a more lengthy pe-

22 riod of incarceration for this individual"). Thus "[t]he test is

23 not whether some evidence supports the reasons the Board cites for

24 denying parole, but whether some evidence indicates a parolee's

25 release unreasonably endangers public safety. Some evidence of the

26 exsistence of a particular factor does not necessarily equate to

27 some evidence the parolee's release unreasonably endangers public

28 safety." Lee, 143 Cal. App. 4th at 1408 (citations and footnote

omitted); see also In re Elkins, 144 Cal. App. 4th 475, 499, 50 Cal. Rptr. 3d 503 (Cal Ct. App. 2006) (holding that the "governor, in reviewing a suitability determination, must remain focused ... on facts indicating that release currently poses 'an unreasonable risk of danger to society' " (citing Cal. Code Regs. tit. 15, § 2402 (a))); Scott, 133 Cal. App. 4th at 591 ("The factor statutorily required to be considered, and the overarching consideration, is 'public safety'" (citing Cal. Penal Code §3041 (b))).

Thus, the premise that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation" (Biggs v. Terhune, 334 F.3d, at 917. supra), must be viewed in the context and an honest determination made free of political influnce.

Petitioner's case is exactly what Biggs envisioned when it stated that repeated refusals to grant a parole release date to an inmate with exemplary post-conviction record may violate the prisoner's due process rights. Biggs, 334 F.3d at 919. The record is replete with evidence of petitioner's **remorse and rehabilitation,** including positive psychological reports which were completely ignored by the Board and the state court to conclude that petitioer would pose an unreasonable risk of danger if released from prison. Additionally, petitioner's record shows extensive self-help improvement through educational and vocational advancements as well as therapy, and twenty years of disciplinary free incarceration (with absolutely no indication of any violent conduct while incarcerated). While the BPH may initially have been entitled to

14.

1  rely upon the commitment offense and petitioner's criminal history
2  to find petitioner  unsuitable for parole, under these circumstan-
3  ces, the continued reliance on these pre-convicted factors by the
4  BPH violated due process because it amounted in an arbitrary dec-
5  ision and because these factors do not now constitute "some evid-
6  ence" with "some indicia of reliability" of petitioner's danger-
7  ousness. See Hill, 472 U.S at 455; Biggs, 334 F. 3d at 917; Irons,
8  358 F. Supp.2d at 947; Masoner v. State, 2004 WL 1080177 *1-2
9  (C.D. Cal. 2004).

10      At the February 6, 2007 Hearing, the Board found Amador un-
11  suitable for parole based on the following: (1) the offense was
12  carried out in a manner that demonstrated a very callous disregard
13  for human suffering. (2) The Board found petitioner unsuitable for
14  parole due to his history of unstable and tumultuous relationships
15  with others, particularly his wife.

16      "A prisoner's commitment offense may constitute a circumst-
17  ance tending to show that a prisoner is presently too dangerous to
18  be found suitable for parole, but the denial of parole may be pre-
19  dicated on a prisoner's commitment offense only where the Board
20  can point to factors beyond the minium elements of the crime for
21  which the inmate was committed that demonstrate the inmate will,
22  at the time of the suitability hearing, present a danger to society
23  if released." Irons, 505 F.3d at 852 (quoting Dannenberg, 34 Cal.
24  4th at 1071, 23 Cal. Rptr.3d 417, 104 P.3d 783) (emphasis added).
25  These factors include the fact that " '[t]he offense was carried
26  out in a manner which demonstrates an exceptionally callous dis-
27  regard for human suffering' " and that " '[t]he petitioner has a
28  history of unstable and tumultuous relationships with others. ' "

Id. (quoting Cal. Code Regs. §2402 (1)(D)(3).

As stated in the original petition. Petitioner contends the state court erred in its analysis of the factors underlying the Board's decision to deny parole. The state courts decisions were based on **unreasonable determination of the facts.**

The Board relied on sections §2402 (1)(D)(3) when it denied Amador parole. Second degree murder by its nature evinces a certain level of callousness because it "requires express or implied malice-i.e., the perpetrator must kill another person with the specific intent to do so; or he or she must cause another person's death by intentionally performing an act, knowing it is dangerous to life and with **conscious disregard for life.**" In re Smith, 114 Cal. App. 4th 343, 366, 7 Cal. Rptr. 3d 655 (2003). As this Smith court noted, "[f]or this reason, it can reasonably be said that all second degree murders by definition involve some callousness-i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings or suffering of others." Id (emphasis in original). "Therefore, to demonstrate 'an exceptionally callous disregard for human suffering'.. the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder." In re Scott, 119 Cal. App. 4th 871, 891, 15 Cal. Rptr.3d 32 (2004) (citations omitted).

In a recent case the court of appeals analysis in In re Dannenberg 156 Cal. App. 4th 1395 the court noted [¶] Pursuant to the California Supreme Court's analysis and decision in this case, there will always be some evidence that the crime is more than the minimum necessary for second degree murder conviction and this will always be enough to deny the

16.

petitioner parole for his second degree murder conviction. "The court invited Dannenberg to contend that his offense was not especially egregious for a first degree murder" and therefore that he should be released on parole because he had served enough time "within the matrix for first degree murder."

Our deferntial statdard of review, which requires us to credit the Governors findings if they are supported by a modicum of evidence, does not mean that there is a modicum of evidence that a commitment offense was "especially heinous" will eternally provide adequate support for a decision that a prisoner is unsuit-able for parole. Indeed, in the wake of the California Supreme Court's decision in Dannenberg, the Courts of Appeal have elabora-ted on the critical distinction between the finding that the com-mitment offense was "especially heinous" and the nexus that links that finding to the Governor's conclusion that the prisoner curr-ently poses an unreasonable risk of danger to society if released (In re Dannenberg, supra, 156 Cal. App. 4th 1399).

It is not the mere passage of time that deprives Dannenberg commitment offense of predictive value with respect to risk he may pose to society. The quanity and quality of Dannenberg's consiste-nt and spotless record of upstanding conduct for the last 20 years, coupled with the absence of any negative factors and presence of every conceivable favorable factor, combine to eliminate any mod-icum of predictive value that his commitment offense once had. The record before the Board, upon which the Governor's decision was required to be based, lacks any support for the Governor's conclusion that, due to the nature of his commitment offense, Dannenberg poses a current, unreasonable risk of danger to society if released. Consequently, while there is some evidence that that

17.

1   Dannenberg's commitment offense was "especially heinous," when
2   measured against the minimum elements of second degree, the Gover-
3   nor's decision violates due process because there is no longer any
4   evidence that solely due to the nature of Dannenberg's offense, he
5   currently poses an unreasonable risk of danger to society. In re
6   Dannenberg 156 Cal. App. 4th at 1401.

7        The court is reminded that there must be record evidence
8   supporting petitioner's danger to public safety **at the time of**
9   **the parole hearing** in order to deny parole. Assumptions by BPH
10  Members are not evidence. The state courts decisions were based
11  on an **unreasonable determination of the facts.** The state court
12  denied relief to petitioner based on its determination that the
13  Board found petitioner unsuitable for parole due to his history
14  of unstable and tumultuous relationships with other, **particularly**
15  **his wife.** It is true that the relationship with his wife could
16  be considered unstable and tumultous as shown by the record. There
17  were several separations between the couple. There is an arrest
18  for "Feloney Wife Beating" in violation of Penal Code §273 (d)
19  and another incident of the same in 1978, incidents that happened
20  well over thrity (30) years ago and also do not support a conclu-
21  sion that Amador currently poses any threat to public safety. Be-
22  sides the evidence in the record, there is no record evidence to
23  support that Amador has a history with others other than his wife.
24  His distant history of unstable and tumultuous relationship wife
25  was not some evidence to support the Board's conclusion that his
26  release to parole would unreasonably endanger public safety.
27  (Biggs, 334 F.3d at 916; Tripp, 150 Cal App. 4th at 313 ["The ev-
28  idence must substantiate the ultimate conclusion that the prisoner's

18.

release currently poses an unreasonable risk of danger to the pub-
lic. It violates a prisoner's right to due process when the Board
or Governor attaches significance to evidence that forewarns no
danger to the public."]). Because there is no reliable evidence
supporting the Board's conclusion that petitioner is unsuitable
for parole, that determination violates due process.  See Hill,
472 U.S. at 455. The state court's determination to the contrary
was based upon an unreasonable determination of the facts in light
of the evidence presented during the parole hearing and amounted
to an unreasonable application of clearly established Supreme
Court precedent. See Hill, 472 U.S. at 455; Taylor v. Maddox, 366
F,3d 992, 999-1000 (9th Cir.), cert. denied, 125 S.Ct. 809 (2004).
Accordingly, petitioner is entitled to relief. See McQuillion, 306
F.3d at 912 (finding that petitioner was entitled to relief where
none of the four grounds for recision of petitioner's parole rel-
ease date was supported by some evidence, and therefore the dec-
ision violated due process); Irons, 358 F.supp.2d at 947-951 (gr-
anting habeas relief where the BPT improperly relied upon the un-
changing circumstances of the commitment offense in finding petit-
ioner unsuitable for parole in his fifth parole suitability hear-
ing, and also asserted that petitioner needed more therapy, a con-
clusion that lacked any support in the record.

## CONCLUSION

For the foregoing reasons, petitioner prays the relief
requested herein will be granted.

Date: _7-25-08_                          _Henry Amador_

1    ### DECLARATION OF SERVICE BY MAIL

2    (28 U.S.C. section 1746)

3        I,  **Henry Amador**          , declare: That I am a resident

4    of the Correctional Training Facility in Soledad, California; I

5    am over the age of eighteen (18) years; I am / am not a party to

     the attached action; My address is P.O. Box 689,  GW-220-U, CTF -
6    Central Facility, Soledad, CA  93960-0689    served the attached

7    document entitled:  DENIAL AND TRAVERSE;
                          MEMORANDUM OF POINTS AND AUTHORITIES
8

9

10   on the persons/parties specified below by placing a true copy of

11   said document into a sealed envelope with the appropriate postage

     affixed thereto and surrendering said envelope(s) to the staff of
12   the Correctional Training Facility entrusted with the logging and

13   mailing of inmate legal mail addressed as follows:

14
         **OFFICE OF ATTORNEY GENERAL**
15       455 GOLDEN GATE AVENUE, SUITE 11000
         san francisco, ca.94102-7004
16

17

18

19

20

21

22       There is First Class mail delivery service by the United

23   States Post Office between the place of mailing and the addresses

     indicated above.  I declare under the penalty of perjury under the
24   laws of the United States that the foregoing is true and correct,

25   and I executed this service this 25 th day of  July        ,

26   2008 , at the Correctional Training Facility in Soledad, CA.

27
                              *Henry Amador*
28                            Declarant